IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA WIEDA-CULP, </br></br>Plaintiff, </br></br>vs. </br></br>MUTUAL OF OMAHA INSURANCE COMPANY, </br></br>Defendant. | Case No. 15-cv-10055 </br></br>Judge |

**COMPLAINT FOR LONG TERM DISABILITY BENEFITS DUE AND
CLARIFICATION AS TO RIGHTS UNDER THE PLAN
29 U.S.C. § 1132(a)(1)(B)**

Now comes the Plaintiff, BARBARA WIEDA-CULP, by her attorney MICHAEL BARTOLIC of THE LAW OFFICES OF MICHAEL BARTOLIC, LLC, and complaining against the Defendant, MUTUAL OF OMAHA INSURANCE COMPANY, she states:

**NATURE OF THE ACTION**

1. This is an ERISA case over long term disability ("LTD") benefits involving an insurance carrier that after finding Plaintiff disabled from her own occupation as a Chief Operating Officer for 5 years, it reversed course without basis. It (1) ignored the effects of Plaintiff's Rheumatoid Arthritis affecting her joints, (2) completely ignored her objectively diagnosed Fibromyalgia, (3) ignored her requirement to take narcotic pain medication to treat her pain, (4) misrepresented it could not secure a necessary Independent Medical Evaluation by a physician (choosing to instead rely on a file-only reviewing medical consultant), and (5)

mischaracterized the video footage of surveillance (which showed Plaintiff only performing activities consistent with her reported limitations).

2. The insurer made no attempt to reconcile its decision that Plaintiff was capable of performing an occupation at the light physical exertion level, which required working hours significantly in excess of 40 hours per week, with the unbiased determination of the Social Security Administration ("SSA") that Plaintiff is disabled from all substantial gainful activity, which includes an express finding that Plaintiff could not perform her prior work. The insurer received the benefit of this determination and award by recouping overpaid benefits, but was so dismissive of SSA's analysis when terminating benefits that the insurer would not even mention the award.

3. This action is brought pursuant to the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1132(a)(1)(B) seeking benefits due pursuant to the terms of an employee benefit plan. Plaintiff also seeks reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

## JURISDICTION AND VENUE

4. Jurisdiction of the Court is based upon ERISA, and in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Those provisions give the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

5. The ERISA statute provides a mechanism for administrative or internal appeal of benefit denials at 29 U.S.C. § 1133. Those avenues of appeal have been exhausted.

6. The ERISA venue statute provides that an action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may

be found." 29 U.S.C. § 1132(e)(2). By virtue of the plan administrator being located within the Northern District of Illinois, the location of Plaintiff's employer—and where Plaintiff worked while insured by the applicable policy—the plan is administered in this district. Venue is thus proper in the United States District Court for the Northern District of Illinois.

## THE PARTIES

7. Plaintiff, Barbara Wieda-Culp ("Wieda-Culp" or "Plaintiff"), is a former employee of Group Administrators, Ltd. ("Group Administrators"), located in Schaumburg, Illinois. Group Administrators sponsors an employee welfare benefit plan, as that term is defined in 29 U.S.C. § 1002(1), which provides long-term disability benefits. Incident to her employment with Group Administrators, Wieda-Culp received coverage under the plan as a "participant" as defined by 29 U.S.C. § 1002(7).

8. GROUP ADMINISTRATORS, LTD. LONG TERM DISABILITY BENEFITS PLAN NO. GMT-7L22 ("the Plan") is an employee welfare benefit plan, as that term is defined in 29 U.S.C. § 1002(1), which provides long-term disability benefits. Group Administrators serves as the Plan Administrator and administers the Plan in Schaumburg, Illinois. Group Administrators purchases insurance to fund benefits under the Plan, and delegates the function of reviewing claims for eligibility to the insurer underwriting the policy and insuring benefits under the Plan.

9. Defendant MUTUAL OF OMAHA INSURANCE COMPANY ("Mutual of Omaha") insures the Plan through insurance policy number GMT-7L22, (attached in part hereto as Plaintiff's Exhibit #1). Mutual of Omaha is the claim review fiduciary of the Plan, insures the Plan, and is responsible for paying any LTD benefits under the Plan. Due to its dual role as

decision-maker of benefit claims and payor of benefits, Mutual of Omaha suffers from a structural conflict of interest that infected and biased its decision to terminate benefits.

### FACTS PERTAINING TO WIEDA-CULP'S DISABILITY CLAIM

10. Wieda-Culp is a participant under the Plan. As a participant, she was entitled to benefits set forth in the governing insurance policy.

11. The insurance policy defines **Total Disability** as follows:

> A covered person is considered totally disabled under the definition if he or she is unable to perform all of the material duties of his or her regular occupation on a full-time basis because of a sickness or injury. There is no test to see if the person can return to work in another occupation.

12. Group Administrators administers the Plan in Schaumburg, Illinois. Mutual of Omaha originally issued and delivered the insurance policy, attached as Exhibit 1, to Group Administrators in Illinois in 1995. Upon information and belief, Mutual of Omaha has subsequently renewed the policy and adjusted the premium rate from time to time, with the most recent renewal occurring after July 1, 2005.

13. In 2009 Mutual of Omaha proposed modifying the definition of "Disabled" to include a transitional definition after 24 months of disability payments. Group Administrators never accepted that change to the policy. Nevertheless, Mutual of Omaha repeatedly cited the proposed new definition in its adverse benefit determinations, while still applying the applicable "Own Occupation" definition when making its decisions.

14. Wieda-Culp served as Group Administrators' Chief Operating Officer until she became disabled on June 21, 2009 by symptoms of her systemic lupus erythematosus, rheumatoid arthritis, polyarthritis, carpal tunnel syndrome, and fibromyalgia. Wieda-Culp has been validly diagnosed with these conditions through objective means, including tender point examinations for fibromyalgia.

15. As a result of these conditions, Wieda-Culp constantly experiences pain, fatigue, and other symptoms, that among other things, interfere with her attention and concentration. She cannot travel meaningful distances as required.

16. In addition to the pain and fatigue interfering with Wieda-Culp's attention and concentration, she takes numerous prescribed medications, including narcotic pain medication (Dilaudid), that further diminish that attention and concentration.

17. Her rheumatoid arthritis causes inflammation and a dull, throbbing, persistent pain in both her hands. Wieda-Culp attempted treatment with medication, and repeated steroid injections to joints and trigger points, but has been unable to find meaningful relief from the symptoms.

18. This pain in Wieda-Culp's hands completely erodes the occupational base at any level. Light physical exertion level work requires lifting and carrying beyond what Wieda-Culp's limitations of use of her hands would permit. Even sedentary level occupations require an individual to use hands for activities such as typing, fingering documents, etc.

19. Wieda-Culp's conditions produce waxing and waning symptoms that disable her from work on all days, but produce good days and bad days. On good days, Wieda-Culp attempts to be more active, such as running an errand. On bad days, she is completely incapacitated by the pain and fatigue.

20. Wieda-Culp's treating physicians, who directly observe her, opined that Wieda-Culp experiences symptoms that would cause her to be absent from work at least 6 days per month. This is, in fact, an understatement, because on days Wieda-Culp attempts to exert herself or accomplish normal activities of daily living, she is forced to rest the entire following day. Her

5

joint pain and overall myalgias do not permit her to sustain any kind of activity on a regular basis.

21. Missing work 6 or more days per month makes one ineligible for competitive full-time employment.

22. Group Administrators supplied Mutual of Omaha with a job description, which included working approximately 60 hours per week, management of all operations and reporting to the President and Chief Executive Officer, and heavy involvement in sales and required travel.

23. The insurance policy does not define what material duties are, and though many insurance policies specifically define that term to exclude working over 40 hours per week as a material duty, this policy does not. Because Wieda-Culp is unable to work the number of hours required of a Chief Operating Officer, she cannot perform all the material duties, and is thus disabled under the terms of the policy.

24. Wieda-Culp claimed the disability benefits in 2009, and Mutual of Omaha approved the claim, paying Wieda-Culp.

25. Mutual of Omaha required Wieda-Culp to pursue Social Security disability benefits, and any benefits awarded by SSA would reduce dollar-for-dollar the benefits paid by Mutual of Omaha.

26. Wieda-Culp filed a claim for Social Security disability benefits with the Social Security Administration. SSA determined that Wieda-Culp has been disabled from all employment and could not engage in any substantial gainful activity since June 21, 2009.

27. After SSA determined Wieda-Culp was disabled, Mutual of Omaha financially benefitted from that decision.

6

28. After 5 years of determining Wieda-Culp was Totally Disabled from her numerous chronic and progressive conditions, Mutual of Omaha abruptly terminated Wieda-Culp's benefits as of September 30, 2014, without any documentation of cured conditions or alleviated symptoms.

29. Mutual of Omaha relied on opinions of medical consultants who misrepresented that there is no evidence of joint impairment, and completely ignored documented inflammation, redness and pain from Rheumatoid Arthritis. The medical consultants would not even acknowledge that Wieda-Culp has Rheumatoid Arthritis, or Fibromyalgia, despite these conditions being objectively diagnosed and treated and referenced in the time-concurrent records.

30. Mutual of Omaha asserted it wished to have an independent medical examination, but could not find such a doctor. To the contrary, plenty of physicians were available to perform an independent medical examination. Mutual of Omaha merely used this as an excuse to rely on paper reviewers, who in turn ignored documented symptoms and conditions.

31. Mutual of Omaha placed Wieda-Culp under surveillance for 3 days, which revealed her minimally leaving her home, and all evidence in the surveillance was consistent with Wieda-Culp's reported restrictions and limitations, thus corroborating her disability.

32. SSA did not base its decision on any medical-vocational grids or other shortcuts from which Mutual of Omaha's process can be distinguished. In fact, Mutual of Omaha did not even make an attempt to explain how Wieda-Culp can satisfy the SSA definition of being disabled from any substantial gainful activity, yet not be disabled under its own definition. Mutual of Omaha cannot reconcile these opposite results, except that its own bias and conflict caused it to ignore relevant evidence.

33. Mutual of Omaha's benefit termination constituted an adverse benefit determination, as that term is used in 29 C.F.R. § 2560.503-1.

34. Pursuant to the administrative remedies in the Plan and insurance policy, Wieda-Culp timely appealed the benefit termination on April 2, 2015.

35. Mutual of Omaha upheld its benefit termination on May 21, 2015, again relying on medical file reviewers' opinions which ignored objectively diagnosed conditions and symptoms and treatments thereof. Mutual of Omaha again ignored SSA's decision and rationale in finding Wieda-Culp disabled under its stricter definition of disability.

36. Mutual of Omaha's May 21, 2015 decision constituted a final administrative denial, thereby exhausting the administrative remedies under the Plan and policy.

37. Mutual of Omaha failed to provide Wieda-Culp with a full and fair review of her claim.

38. Under 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a participant or beneficiary to recover benefits due to her under the terms of the plan, to enforce her rights under the terms of the plan, or to clarify her rights to future benefits under the terms of the plan.

## RELIEF SOUGHT

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in favor of the Plaintiff and against Mutual of Omaha, and award Plaintiff all past due benefits and declare Plaintiff's right to reinstatement of benefits in the amount equal to the contractual amount of benefits to which she is entitled prospectively; and

B. That the Court order Mutual of Omaha to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment; and

      C.      That the Court award Plaintiff her attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of the suit; and

      D.      That the Plaintiff recovers any and all other relief to which she may be entitled.

Respectfully Submitted,

Dated: November 5, 2015      By:    <u>/s/ Michael Bartolic</u>
                                                        Michael Bartolic

Michael Bartolic
The Law Offices of Michael Bartolic, LLC
208 S. LaSalle Street
Suite 1420
Chicago, Illinois 60603
Tel: 312-635-1600
Fax: 312-635-1601
ARDC # 6285708